UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KENDRA P.,[1]

                                Plaintiff,

                                                                                   Case # 19-CV-1391-FPG

v.

                                                                                   DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

## INTRODUCTION

Plaintiff Kendra P. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 15, 17. For the reasons that follow, the Commissioner's motion is DENIED, Plaintiff's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

In September 2016, Plaintiff applied for SSI with the Social Security Administration (the "SSA"). Tr.[2] 15, 63–65, 135. She alleged disability beginning in September 2016 due to depression, anxiety, and suicidal tendencies. *Id.* In August 2018, Plaintiff and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge Rosanne M. Dummer

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 7.

(the "ALJ"). Tr. 15, 28. On September 7, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. 15–28. On August 12, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1–3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's "function to determine *de novo* whether plaintiff is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks and brackets omitted).

### II.  Disability Determination

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 416.920(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work

activities. *Id.* § 416.920(a)(4)(ii), (c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(a)(4)(iii). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* § 416.920(a)(4)(iv), (e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits claimant to perform the requirements of his or her past relevant work. *Id.* § 416.920(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(a)(4)(v), (g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since her

application date. Tr. 17. At step two, the ALJ found that Plaintiff had several severe impairments: degenerative disc disease, left shoulder impingement, major depressive disorder, anxiety, and a history of marijuana and alcohol dependence in reported remission. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 18.

Next, the ALJ determined Plaintiff's RFC. In relevant part, the ALJ found that Plaintiff could: understand, remember, and carry out instructions for routine, repetitive type tasks; sustain attention and concentration for two-hour segments of time in an eight-hour day; tolerate brief and superficial interactions with others (no complex interactions, *i.e.*, arbitration, negotiation), tolerate occasional, brief, and superficial interactions with the public; and adapt to changes for routine repetitive type tasks. Tr. 19. The ALJ further found that Plaintiff should avoid fast pace or high production goal work. *Id.* At steps four and five, the ALJ found that Plaintiff could not perform her past relevant work but that there were other jobs that existed in significant numbers in the national economy that she could perform. Tr. 26–28. The ALJ therefore found that Plaintiff had not been disabled from her application date through the date of the ALJ's decision. Tr. 28.

## II. Analysis

Plaintiff challenges the ALJ's RFC determination regarding her mental impairments, arguing that it was erroneous because it was not supported by a competent medical opinion.[3] ECF No. 15-1 at 18–26; ECF No. 20 at 3–11. The Court agrees.

A claimant's RFC reflects what she "can still do despite . . . her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal quotation marks omitted). An RFC determination

---

[3] Because remand is appropriate based on the ALJ's failure to ground her RFC assessment in a competent medical opinion, the Court declines to address Plaintiff's related arguments that the ALJ failed to develop the record by failing to seek a form referenced by one of Plaintiff's treatment providers and by failing to afford that treatment provider's opinion great weight. ECF No. 15-1 at 20–22. Plaintiff does not challenge the ALJ's RFC determination with respect to her non-mental limitations. ECF No. 15-1 at 18–26; ECF No. 20 at 3–11.

need not "perfectly correspond" with the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). But "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (internal quotation marks omitted). In other words, an ALJ's ability to make inferences regarding the functional limitations caused by an impairment does not extend beyond that of an ordinary layperson. "While an ALJ may render common sense judgments about functional capacity, she must avoid the temptation to play doctor." *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) (internal quotation marks and brackets omitted).

Here, the ALJ found that Plaintiff had severe impairments, including anxiety and major depressive disorder. Tr. 17. In her RFC analysis, the ALJ found that, despite these impairments, Plaintiff was capable of performing work with highly specific restrictions, but the ALJ offers scant explanation as to how she formulated these particular limitations. Tr. 19–26.

The ALJ did claim to give "some" weight to the opinion of consultative examiner, Christine Ransom, Ph.D. Tr. 25. On December 15, 2016, Plaintiff was evaluated by Dr. Ransom. Tr. 240. Plaintiff reported that her depression and anxiety have improved with her current treatment, and she was pleased with her providers. *Id.* Plaintiff continued to report feelings of stress and social isolation from family (although she had a close friend who lived nearby). *Id.* Although she previously had experienced suicidal ideation, she did not currently have such ideation. Tr. 240–41. She denied generalized anxiety, panic attacks, manic symptomatology, thought disorder, and

cognitive symptoms and deficits. Tr. 241. Dr. Ransom opined that, due to major depressive disorder, currently mild, and unspecified anxiety disorder, currently mild, Plaintiff would have mild difficulty: following and understanding simple directions and instructions; performing simple tasks independently; maintaining attention and concentration for simple tasks; maintaining a simple regular schedule; learning simple new tasks; performing complex tasks; relating adequately with others; and appropriately dealing with stress. Tr. 242–43. Dr. Ransom concluded that her evaluation appeared consistent with mild psychiatric conditions that would not significantly interfere with Plaintiff's ability to function on a daily basis. *Id.* Dr. Ransom's prognosis was "[f]air to good with continued treatment," and she recommended that Plaintiff continue psychiatric treatment and mental health counseling. Tr. 243.

The ALJ gave some weight to the state agency psychological consultant's mental assessment. Tr. 25. On January 4, 2017, A. Dipeolu, Ph.D., performed a psychiatric review of the medical record and found that Plaintiff's mental impairments were non-severe. Tr. 67–69. Dr. Dipeolu opined that Plaintiff had only mild difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. Tr. 68. Dr. Dipeolu concluded that "[t]he totality of the evidence indicates [Plaintiff]'s psychiatric impairments are non severe." Tr. 68–69.

The ALJ gave the findings of Vivian Gerard, N.P., "limited" weight. Tr. 25. On November 7, 2016, Gerard wrote that "[a]t this time [Plaintiff] does not appear able to work until her mental health concerns are stabilized. . . . [T]his writer will fill the form out for her to keep her from working until she is psychiatrically stable." Tr. 348–49. On April 30, 2018, Gerard reported that Plaintiff described her mood as "out of control." Tr. 324. Plaintiff presented as anxious, depressed, and teary. Tr. 324–25. The ALJ discounted Gerard's findings based on the "limited" duration[4] of

---

[4] The ALJ specifically states that Gerard's assessments "appears to be for duration." Tr. 25. Plaintiff claims that this statement is incomprehensible. ECF No. 20 at 8–9. The Court disagrees. Even with the typo, the

Plaintiff's severe symptoms. Tr. 25. The ALJ further noted that Plaintiff's consultative examination with Dr. Ransom occurred one month after Gerard opined that Plaintiff was unable to work, and Dr. Ransom assessed only mild mental health problems. *Id.* The ALJ also noted Gerard's treatment records showed Plaintiff's symptoms improving, at times, with only routine, monthly medication management. *Id.* Finally, the ALJ noted that, since a hospitalization following a suicide attempt, Plaintiff had not required further hospitalizations (though counseling was recommended), and Plaintiff was receiving support from an aunt and her grandmother. *Id.*

Despite claiming to give "some" weight to the opinions of Drs. Ransom and Dipeolu, the ALJ is clear that she rejects their conclusions regarding the limitations caused by Plaintiff's depression and anxiety. *See York v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 259, 261–62 (W.D.N.Y. 2019) (holding that, although ALJ gave "partial" weight to "the only medical opinion evidence of record," the ALJ's rejection of the opinion in relevant part meant that the ALJ's RFC assessment was "not supported by substantial evidence"); *see also Garrett v. Comm'r of Soc. Sec.*, No. 17-CV-1009, 2019 WL 2163699, at *5 (W.D.N.Y. May 17, 2019) ("By not assigning significant weight to any opinions and, instead, assigning them only limited weight, the ALJ created an evidentiary gap in the record requiring remand."). Dr. Dipeolu opined that Plaintiff's psychiatric impairments were non-severe, and Dr. Ransom opined that Plaintiff's psychiatric impairments would cause only mild limitations in various functional areas. Tr. 68–69, 242–43. Instead of accepting either opinion, the ALJ concluded that Plaintiff's anxiety and depression were severe and formulated an RFC with more substantial limitations than those opined by Drs. Ransom and Dipeolu, *see* 20 C.F.R. § 416.920a(d)(1) (noting that, if a mental limitation is rated as "mild," it is

---

ALJ's meaning is clear. As discussed below, however, the Court does not necessarily agree with the ALJ's assessment.

7

generally not severe), and less substantial than the total inability to work noted by Gerard in November 2016.[5] Tr. 19.

It is of no consequence that the ALJ assessed a more restrictive RFC than was supported by the opinions of Drs. Ransom and Dipeolu. *Cf. Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) (declining to remand where an ALJ made an RFC determination that may have been more restrictive than necessary). The ALJ's error does not result from imposing a more restrictive RFC than necessary, but rather, the error stems from failing to ground her analysis in the record evidence. The Court must evaluate the ALJ's RFC determination in light of her conclusion that Plaintiff suffered from anxiety and depression. "[G]iven the lack of any competent medical opinion, the Court, like the ALJ, is not in a position to assess the extent of functional limitation posed by [these mental] impairments." *Agostino*, 2020 WL 95421, at *4.

The Court acknowledges that in some circumstances it is appropriate for an ALJ to make an RFC finding without relying on a medical opinion, particularly where the record contains sufficient evidence from which the ALJ could assess a claimant's RFC or where no medical

---

[5] The Court is skeptical of the ALJ's expressed reasons for discounting Gerard's opinion in favor of Dr. Ransom's consultative examination. Tr. 25. The Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (internal quotation marks omitted). "This concern is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Id.* Further, the ALJ's analysis smacks of cherry picking in that she claims Plaintiff's symptoms were noted as improved in successive appointments. Tr. 25. Although some medical records reflect an improved condition, other records indicated continued, significant struggles with depression and anxiety. *See Younes v. Colvin*, No. 14-CV-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both."). Regardless, even if the ALJ had good reasons for discounting Gerard's opinion, *i.e.*, she is not an acceptable medical source and her opinion does not speak to Plaintiff's functional capacity but relates to an issue reserved to the Commissioner, *Suttles v. Berryhill*, 756 F. App'x 77, 77–78 (2d Cir. 2019) (summary order) (affirming ALJ's decision to afford opinion of nurse practitioner little weight "because she was not an acceptable medical source"); *Morris v. Colvin*, No. 15-CV-5600, 2016 WL 7235710, at *8 n.2 (E.D.N.Y Dec. 14, 2016) (noting that ALJ was justified in rejecting opinion that plaintiff was "totally and permanently disabled from work" because it was an issue reserved for the commissioner), the ALJ needed *some* basis for her RFC formulation. The Court finds none.

evidence conflicts with the ALJ's RFC determination. *See, e.g.*, *Pellam v. Astrue*, 508 F. App'x 87, 90–91 (2d Cir. 2013) (summary order) (upholding an ALJ's RFC determination where the ALJ "rejected" consultative examiner's opinion but the "opinion largely supported the ALJ's assessment of" claimant's RFC and the RFC was supported by the treatment notes of claimant's doctors); *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) (summary order) (finding that, "although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination," that determination was supported by substantial evidence because the plaintiff "failed to adduce any medical evidence inconsistent with the ALJ's determinations"). *But see Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) (summary order) ("[A] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion." (internal quotation marks omitted)); *Deshotel v. Berryhill*, 313 F. Supp. 3d 432, 435 (W.D.N.Y. 2018) ("[T]he leeway given to ALJs to make common sense judgments does not necessarily extend to the assessment of mental limitations, which are by their very nature highly complex and individualized." (internal quotation marks omitted)).

Here, however, the ALJ fails to square her highly specific RFC determination with the record evidence and her determination that Plaintiff is severely impaired by her depression and anxiety. The Court is unable to discern any medical evidence that supports the ALJ's RFC formulation. In fact, there is significant evidence that the Plaintiff suffered from severe mental health issues that impacted her daily activities. Plaintiff attempted suicide one month before the relevant period and was hospitalized. Tr. 217.[6] As the Commissioner and the ALJ both point out,

---

[6] Although she has not been hospitalized since, Tr. 43–44, her suicide attempt and hospitalization occurred immediately before the approximately two-year period at issue. The Court perceives no basis as to why Plaintiff's suicide attempt and hospitalization would not be relevant to her mental health condition during that period. The ALJ minimizes the event by referring to it as a "drug overdose," Tr. 24, 26, but most of the

9

some medical records note that Plaintiff was, at times, in good condition psychiatrically, Tr. 321–22, 327–28, 335–38, but the Second Circuit has cautioned against placing too much weight on fleeting moments of improvement in a claimant's mental health. *See Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) ("Cycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." (internal quotation marks and brackets omitted)).

Throughout the relevant period, Plaintiff's anxiety and depression, possibly stemming from trauma relating to sexual abuse she suffered as a child, caused her to present at times with a teary affect (including one session where she was crying hysterically) or agitated leg movement; to claim she wished she did not wake up in the morning; and to report that she does not do the things she used to enjoy, that she self isolates, and that she has concentration issues. Tr. 324–25, 329–30, 332–33, 340–48, 352–54. She also reported difficulty attending therapy sessions, either because her therapist was male, which caused issues due to her past trauma, or because there were too many people in the waiting room. Tr. 214, 348. These medical records appear consistent with her hearing testimony and a report Plaintiff completed regarding her symptoms. Tr. 39–40, 46–49, 51–53 (testifying to difficulties being around others, particularly male coworkers; finding a female therapist (who does not have a busy waiting area); with self-isolation; and with concentration issues), 170–75 (reporting on a disability form that she struggles to focus and with concentration; she generally refuses to shop or go out unless she has someone with her, she struggles to be around people; and she self isolates).

---

relevant medical records refer to the event as a suicide attempt. Tr. 217, 227, 314. *But see* Tr. 315 (referring to the event as "an impulsive overdose").

The ALJ evaluated this evidence and somehow determined that Plaintiff could, among other specific limitations, "sustain attention and concentration for two-hour segments of time in an eight-hour day" and "could tolerate brief and superficial interactions with others." Tr. 19. There are multiple medical records that report Plaintiff has difficulty concentrating and remembering things, Tr. 212, 227, but none of these medical records, or any other evidence in the record, demonstrate that Plaintiff is capable of maintaining concentration for two-hour segments. This is particularly troubling given that the VE testified that, if Plaintiff's concentration issues required her to be off task about twenty-five percent of the workday or take unscheduled breaks away from the workstation two to three times a day, she would be unable to work. Tr. 58–59; *see Annis v. Comm'r of Soc. Sec.*, No. 18-CV-1276, 2019 WL 6875231, at *10–11 (W.D.N.Y. Dec. 17, 2019) (remanding where no medical opinion supported an ALJ's five-percent off-task determination where, "[a]t best," the conclusion came "from whole cloth" and, "[a]t worst, the conclusion respond[ed] to the vocational expert's testimony that an off-task behavior restriction of 20% . . . would degrade the individual's productivity to unacceptable levels." (internal quotation marks omitted)). Further, as discussed above, there is evidence that Plaintiff has limitations in being around others, particularly men, but the record evidence does not demonstrate that she is capable of superficial interactions[7] with others, including men, in a work setting.

Absent sufficient analysis regarding the ALJ's formulation of Plaintiff's RFC, "the Court does not have an adequate basis for judicial review." *Drabczyk v. Comm'r of Soc. Sec.*, No. 18-CV-355, 2020 WL 4390701, at *5 (W.D.N.Y. July 31, 2020). Such an error creates "an evidentiary gap in the record requiring remand." *Zayas v. Colvin*, No. 15-CV-6312, 2016 WL 1761959, at *4

---

[7] Plaintiff continually complained of anxiety caused by proximity to others, not necessarily interactions with others. The distinction was important to the VE, who noted that all of the examples of work available to Plaintiff identified by the ALJ would involve proximity to others, with the exception of a routing clerk. Tr. 27, 59–60.

(W.D.N.Y. May 2, 2016); *see also Defrancesco v. Berryhill*, No. 16-CV-6575, 2017 WL 4769004, at *4 (W.D.N.Y. Oct. 23, 2017) (holding that the ALJ giving "little weight" to "the only physical medical opinion in the record created an evidentiary gap that require[d] remand"). In short, in formulating Plaintiff's RFC, the ALJ failed to rely on any medical opinion that could bridge the gap between clinical findings and specific functional limitations. It is clearly established that "the ALJ may not interpret raw medical data in functional terms." *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 293 (W.D.N.Y. 2018) (internal quotation marks omitted). That is what the ALJ did here. Accordingly, remand is warranted for further development of the record.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 17, is DENIED, and Plaintiff's Motion for Judgment on the Pleadings, ECF No. 15, is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 11, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court